**THE ROSEN LAW FIRM, P.A.**
Phillip Kim, Esq. (PK 9384)
pkim@rosenlegal.com
Laurence M. Rosen, Esq. (LR 5733)
lrosen@rosenlegal.com
Kevin Chan (KC 0228)
kchan@rosenlegal.com
275 Madison Avenue, 34th Floor
New York, New York 10016
Telephone: (212) 686-1060
Fax: (212) 202-3827



Counsel for Plaintiff

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| ROBERT POLLOCK, INDIVIDUALLY AND ON BEHALF OF ALL OTHERS SIMILARLY SITUATED, | CASE No.: |
| Plaintiff, | CLASS ACTION |
| vs. | **JURY TRIAL DEMANDED** |
| HUANG JIA DONG, SU PEI ZHI, HEN MAN EDMUND, DING WEI DONG, PAUL K. KELLY, CHENG YAN DAVIS, WILLIAM L. STULGINSKY, SU WEI FENG, SHEN CHENG LIANG, JIANWEI LIU, AND CHINA CERAMICS CO., LTD., | |
| Defendants. | |

## COMPLAINT FOR VIOLATION OF THE FEDERAL SECURITIES LAWS

Plaintiff Robert Pollock, individually and on behalf of all other persons similarly situated, by

his undersigned attorneys, for his complaint against Defendants, alleges the following based upon

1

personal knowledge as to himself and his own acts, and information and belief as to all other matters, based upon, *inter alia*, the investigation conducted by and through her attorneys, which included, among other things, a review of the Defendants' public documents, United States Securities and Exchange Commission ("SEC") filings, and information readily obtainable on the Internet.  Plaintiff believes that substantial evidentiary support will exist for the allegations set forth herein after a reasonable opportunity for discovery.

## NATURE OF THE ACTION

1.      This is a federal securities class action on behalf of a class consisting of all persons other than Defendants who purchased the common stock of China Ceramics Co., Ltd. ("China Ceramics" or the "Company") between March 30, 2012 and May 1, 2014 (the "Class Period"), inclusive, seeking to recover damages caused by Defendants' violations of federal securities laws and pursue remedies under the Securities Exchange Act of 1934 (the "Exchange Act").

## JURISDICTION AND VENUE

2.      The claims asserted herein arise under and pursuant to Sections 10(b) and 20(a) of the Exchange Act, (15 U.S.C. §78j (b) and 78t (a)), and Rule 10b-5 promulgated thereunder (17 C.F.R. §240.10b-5).

3.      This Court has jurisdiction over the subject matter of this action pursuant to §27 of the Exchange Act (15 U.S.C. §78aa) and 28 U.S.C. § 1331.

4.      Venue is proper in this Judicial District pursuant to §27 of the Exchange Act, 15 U.S.C. § 78aa and 28 U.S.C. § 1391(b) as a substantial part of the conduct complained of herein occurred in this District.

5.     In connection with the acts, conduct and other wrongs alleged in this Complaint, Defendants, directly or indirectly, used the means and instrumentalities of interstate commerce, including but not limited to, the United States mails, interstate telephone communications and the facilities of the national securities exchange.

**PARTIES**

6.     Plaintiff, as set forth in the accompanying certification, incorporated by reference herein, purchased China Ceramics common stock at artificially inflated prices during the Class Period and has been damaged thereby.

7.     Defendant China Ceramics is a British Virgin Islands corporation with its headquarter located in Jinjing, Fujian Province, People's Republic of China ("PRC"). The Company is a leading Chinese manufacturer of ceramic tiles used for exterior siding and for interior flooring and design in residential and commercial buildings. During the Class Period, the Company's stock was traded on the NASDAQ Stock Market ("NASDAQ") under the symbol "CCCL."

8.     Defendant Huang Jia Dong ("H.J. Dong") has been the Chief Executive Officer of the Company since April 4, 2010. He has been a Director of the Company since November 20, 2009.

9.     Defendant Su Pei Zhi ("Zhi") was a Director of the Company from November 20, 2009 until his resignation on April 28, 2014. He was also the Sales Deputy General Manager of the Company.

10.     Defendant Hen Man Edmund ("Edmund") has been the Company's Chief Financial Officer since November 20, 2009.

11.     Defendant Ding Wei Dong ("D.W. Dong") was a Director of the Company from November 20, 2009 until his sudden resignation on November 1, 2013. As a Director of the

3

Company, he served as a member of the Audit Committee. Upon his resignation, he was replaced by Shen Cheng Liang.

12.    Defendant Paul K. Kelly ("Kelly") was a Director of the Company from August 18, 2009 and the Non-Executive Chairman of the Company from April 4, 2010 until his sudden resignation on November 27, 2013. As a Director of the Company, he served as a member of the Audit Committee. He was subsequently replaced by Jianwei Liu.

13.    Defendant Cheng Yan Davis ("Davis") has been a Director of the Company since November 20, 2009. As a Director of the Company, he served as a member of the Audit Committee. On November 27, 2013, she submitted a letter of resignation effective the end of business on December 31, 2013, but later withdrew it on January 7, 2014.

14.    Defendant William L. Stulginsky ("Stulginsky") was a Director of the Company from April 1, 2010 until his sudden resignation on April 27, 2014. As a Director of the Company, he served as the Chairman of the Audit Committee.

15.    Defendant Su Wei Feng ("Feng") has been a Director of the Company since April 1, 2010.

16.    H.J. Dong, Zhi, Edmund, D.W. Dong, Kelly, Davis, Stulginsky, and Feng are collectively referred to hereinafter as the "Individual Defendants."

## PLAINTIFF'S CLASS ACTION ALLEGATIONS

17.    Plaintiff brings this action as a class action pursuant to Federal Rules of Civil Procedure 23(a) and (b)(3) on behalf of a Class, consisting of all persons who purchased the common stock of China Ceramics during the Class Period and who were damaged thereby. Excluded from the Class are Defendants, the officers and directors of the Company at all relevant times, members of

their immediate families and their legal representatives, heirs, successors or assigns and any entity in which Defendants have or had a controlling interest.

18.     The members of the Class are so numerous that joinder of all members is impracticable. Throughout the Class Period, China Ceramics's common stock was actively traded on the NASDAQ Stock Market. While the exact number of Class members is unknown to Plaintiff at this time and can only be ascertained through appropriate discovery, Plaintiff believes that there are at least hundreds of members in the proposed Class. Members of the Class may be identified from records maintained by China Ceramics or its transfer agent and may be notified of the pendency of this action by mail, using a form of notice customarily used in securities class actions.

19.     Plaintiff's claims are typical of the claims of the members of the Class, as all members of the Class are similarly affected by Defendants' wrongful conduct in violation of federal law that is complained of herein.

20.     Plaintiff will fairly and adequately protect the interests of the members of the Class and has retained counsel competent and experienced in class and securities litigation.

21.     Common questions of law and fact exist as to all members of the Class and predominate over any questions solely affecting individual members of the Class. Among the questions of law and fact common to the Class are:

        (a)     whether the federal securities laws were violated by Defendants' acts as alleged herein;

        (b)     whether the misstatements and omissions alleged herein were made with scienter;

(c)      whether statements made by Defendants to the investing public during the Class Period misrepresented material facts about the business and operations of China Ceramics; and

(d)      to what extent the members of the Class have sustained damages, and the proper measure of damages.

22.      A class action is superior to all other available methods for the fair and efficient adjudication of this controversy since joinder of all members is impracticable.  Furthermore, as the damages suffered by individual Class members may be relatively small, the expense and burden of individual litigation make it impossible for members of the Class to redress individually the wrongs done to them.  There will be no difficulty in the management of this action as a class action.

## SUBSTANTIVE ALLEGATIONS

23.      The Class Period begins on March 30, 2012 when China Ceramics filed with the SEC a materially false and misleading Form 20-F for the fiscal year ended December 31, 2011 (the "2011 20-F").

24.      The 2011 20-F falsely stated that based on the Defendants H.J. Dong and Edmund's evaluation as the Company's CEO and CFO, the Company's internal control over its financial reporting were effective. The 2011 20-F states in relevant parts:

> Under the supervision and with the participation of our management, including our Chief Executive Officer and Chief Financial Officer, management conducted an evaluation of the effectiveness of our internal control over financial reporting based on the criteria established in Internal Control — Integrated Framework issued by the Committee of Sponsoring Organizations of the Treadway Commission. Management has concluded that our internal control over financial reporting was effective as of December 31, 2011.

25.      The 2011 20-F was also false and misleading for it failed to disclose the risk of write-downs of its assets.

6

26.     The 2011 20-F was signed by Defendants H.J. Dong and Edmund. Accompanying the 2011 20-F were the executed Sarbanes-Oxley Act of 2002 ("SOX") certifications of Defendants H.J. Dong and Edmund falsely attesting to the accuracy of the 2011 20-F.

27.     On April 24, 2013, China Ceramics filed with the SEC a materially false and misleading Form 20-F for the fiscal year ended December 31, 2012 (the "2012 20-F").

28.     The 2012 20-F falsely stated that based on the evaluation of the Company's management that its consolidated financial statements were "fairly stated" despite the identification of a material weakness. The 2012 20-F states in relevant parts:

Under the supervision and with the participation of our management, including our Chief Executive Officer and Chief Financial Officer, management conducted an evaluation of the effectiveness of our internal control over financial reporting based on the criteria established in Internal Control — Integrated Framework issued by the Committee of Sponsoring Organizations of the Treadway Commission. Management has concluded that our internal control over financial reporting was not effective as of December 31, 2012 due to the material weakness described below.

A material weakness (within the meaning of PCAOB Auditing Standard No. 5) is a deficiency, or a combination of deficiencies, in internal controls over financial reporting, such that there is a reasonable possibility that a material misstatement of our annual or interim financial statements will not be prevented or detected on a timely basis.

The Company's management determined that Company's oversight of complex transactions is not effective. Specifically, the analysis by management of certain transactions and the supporting documentation generated were not sufficiently detailed to fulfill the requirements of IFRS as issued by the IASB. From time to time the Company will encounter non-routine accounting transactions that require a high level of technical accounting expertise. Non-routine accounting transactions will likely increase in frequency as the Company continues to grow and expand its operations.

As of the date of this report, we are undertaking steps to correct the aforementioned material weakness by providing relevant IFRS trainings to the current corporate accounting team, engaging an external consulting company to review our key operational processes and related internal controls for improvement in internal control system, strengthening the information-sharing process between us and our

external accounting advisory consultants and implementation of more formal review procedures and documentation standards for the accounting and monitoring of non-routine and complex transactions.

Notwithstanding this material weakness, management has concluded that the consolidated financial statements included in this annual report are fairly stated in all material respects for each period presented herein.

29.     The 2012 20-F was also false and misleading for it failed to disclose the risk of write-downs of its assets.

30.     The 2012 20-F was signed by Defendants H.J. Dong and Edmund. Accompanying the 2012 20-F were the executed Sarbanes-Oxley Act of 2002 ("SOX") certifications of Defendants H.J. Dong and Edmund falsely attesting to the accuracy of the 2012 20-F.

31.     On November 1, 2013, Defendant D.W. Dong abruptly resigned as a Director of the Company and a member of the Audit Committee. He was replaced by Mr. Shen Cheng Liang.

32.     On November 13, 2013, the Company announced its financial results for the third quarter of 2013. In its announcement, the Company revealed a substantial asset write-down of property, plant and equipment, stating in relevant parts:

Asset write-down attributable to the disposal of property, plant and equipment was RMB 18.9 million (US\$ 3.1 million) due to the replacement of plant production equipment at the Hengda facility that enables the manufacture of certain ceramic tile products to meet current and expected market demand Net profit was RMB 4.4 million (US\$ 0.7 million).

33.     On November 27, 2013, Defendant Kelly suddenly resigned as the non-Executive Chairman of the Board. He was replaced by Mr. Liu Jianwei.

34.     On that same day, Defendant Davis unexpectedly submitted her letter of resignation to the Board, effective the end of business on December 31, 2013. On January 7, 2014, Defendant Davis withdrew her resignation.

35.     On April 27, 2014, Defendant Stulginsky abruptly resigned as a Director of the Company and Chairman of the Audit Committee. The circumstances surrounding his abrupt departure would be revealed days later.

36.     On April 28, 2014, Defendant Su resigned as a Director of the Company.

### The Truth Begins to Emerge

37.     On May 1, 2014, NASDAQ announced the halt in trading of the common shares of China Ceramics. The announcement states in relevant parts:

> The NASDAQ Stock Market® (Nasdaq:NDAQ) announced that trading was halted today in China Ceramics Co., Ltd. (Nasdaq:CCCL) at 9:13:00 Eastern Time for "additional information requested" from the company at a last price of $1.33.
>
> Trading will remain halted until China Ceramics Co., Ltd. has fully satisfied NASDAQ's request for additional information.

38.     On the same day, the Company filed a notification on Form 12b-25 with the SEC of its inability to timely file its Annual Report on Form 20-F for the year ended December 31, 2013.

39.     The following day, the Company announced the delay in the filing of its annual report for the year ended December 31, 2013 and partially revealed the circumstances surrounding the delay, which includes the firing of its auditor, the hiring of a new auditing firm, and the re-auditing of its prior financial statements. The Company stated, in relevant parts:

> The audit of the Company's consolidated financial statements for the year ended December 31, 2013 has not been completed. On April 30, 2014, the Company terminated the engagement of Grant Thornton (Shanghai, PRC) ("GT") as its principal independent registered public accountants. Following the GT termination, the Company engaged Crowe Horwath (HK) CPA Limited ("CHHK") as the Company's principal independent registered public accountant to audit the Company's financial statements for the fiscal years ended December 31, 2013, 2012 and 2011, as well as to perform services related to the auditing of those financial statements. The Audit Committee and the Board of Directors voted to terminate GT's engagement and to engage a new auditing firm on April 27, 2014, and on April 30, 2014 the Audit Committee and the Board of Directors approved the engagement of CHHK. CHHK

was formally engaged on May 1, 2014.

40.     The Company disclosed that Defendant Stulginsky resigned as an independent director and Chairman of the Audit Committee on April 27, 2014 following the Audit Committee's determination to fire Grant Thornton (Shanghai, PRC) ("Grant Thornton") and hire a new auditing firm, Crowe Horwath (HK) CPA Limited ("Crowe Horwath").

41.     The Company also disclosed that it was notified by NASDAQ of its non-compliance with NASDAQ's continued listing requirement due to its inability to timely file its Annual Report on Form 20-F for the year ended December 31, 2013,

42.     In the same announcement, the Company also revealed a substantial write down of assets in the fourth quarter of 2013, stating in relevant parts:

> During the course of the preparation of its 2013 financial statements, the Company identified certain adjustments in the fourth quarter in connection with a write down of assets resulting from unused capacity at the Company's Hengdali facility. The Company's Hengdali facility utilized capacity capable of producing eight million square meters of ceramic tiles annually in 2013 out of an annual productive capacity of 30 million square meters. The Company's current estimate of the asset write-down for the fourth quarter is approximately $7.5 million.

43.     On May 9, 2014, the Company filed a Form 6-K with the SEC, which provides further details on its firing of Grant Thorton and the re-auditing of its prior financial statements for the years ended December 31, 2012 and 2011. In dismissing Grant Thornton, the Company cited to differences between Grant Thornton and itself in addressing the numerous concerns Grant Thornton raised in connection with its audit of the Company's consolidated financial statements for the year ended December 31, 2013. The Company stated, in relevant parts:

> The Audit Committee and the Board voted to dismiss GT and to engage a new auditing firm to audit the financial statements of the Company for the year ended December 31, 2013 and to re-audit the financial statements for the years ended December 31, 2012 and 2011 based on the communications between GT and

management and the Audit Committee regarding the concerns, the view of a majority of the members of the Audit Committee that communications between GT and the Company's management and Audit Committee had become impaired, and the fact that the positions adopted by GT had already foreclosed the timely filing of the Company's Annual Report on Form 20-F.

\*\*\*\*\*\*

Additional information regarding the concerns raised by GT will be included in subsequent reports on Form 6-K and/or in the Company's Annual Report on Form 20-F for the year ended December 31, 2013.

44.     The Company also disclosed in the same Form 8-K that prior to NASDAQ's halt in the trading of its securities, it previously notified NASDAQ of  (i) its inability to timely file its Annual Report on Form 20-F; and (ii) its firing of Grant Thornton Shanghai PRC ("GT") as the Company's principal independent registered public accountants on April 30, 2014.

45.     To date, trading in the Company's stock remains halted, making the Company's stock illiquid and virtually worthless.

### Applicability of Presumption of Reliance: <br> Fraud-on-the-Market Doctrine

46.     At all relevant times, the market for China Ceramics common stock was an efficient market for the following reasons, among others:

(a)     The Company's stock met the requirements for listing, and was listed and actively traded on NASDAQ, a highly efficient and automated market;

(b)     During the class period, on average, over hundreds of thousands of shares of China Ceramics stock were traded on a weekly basis, demonstrating a very active and broad market for China Ceramics and permitting a very strong presumption of an efficient market;

(c)     China Ceramics regularly communicated with public investors via established market communication mechanisms, including through regular disseminations of press releases

11

on the national circuits of major newswire services and through other wide-ranging public disclosures, such as communications with the financial press and other similar reporting services;

(d)     Numerous FINRA member firms were active market-makers in China Ceramics stock at al l times during the Class Period; and

(e)     Unexpected material news about China Ceramics was rapidly reflected and incorporated into the Company's stock price during the Class Period.

47.     As a result of the foregoing, the market for China Ceramics's common stock promptly digested current information regarding China Ceramics from all publicly available sources and reflected such information in China Ceramics's stock price. Under these circumstances, all purchasers of China Ceramics's common stock during the Class Period suffered similar injury through their purchase of China Ceramics's common stock at artificially inflated prices, and a presumption of reliance applies.

## ECONOMIC LOSS/LOSS CAUSATION

48.     The market for China Ceramics's common stock was open, well-developed and efficient at all relevant times. As a result of these materially false and misleading statements and failures to disclose, China Ceramics's securities traded at artificially inflated prices during the Class Period. Plaintiffs and other members of the Class purchased or otherwise acquired China Ceramics's common stock relying upon the integrity of the market price of China Ceramics's securities and market information relating to China Ceramics, and have been damaged thereby.

49.     During the Class Period, Defendants materially misled the investing public, thereby inflating the price of China Ceramics's common stock, by publicly issuing false and misleading statements and omitting to disclose material facts necessary to make Defendants' statements, as set

forth herein, not false and misleading. Said statements and omissions were materially false and misleading in that they failed to disclose material adverse information and misrepresented the truth about the Company, its business and operations, as alleged herein.

50.     At all relevant times, the material misrepresentations and omissions particularized in this Complaint directly or proximately caused or were a substantial contributing cause of the damages sustained by Plaintiffs and other members of the Class. As described herein, during the Class Period, Defendants made or caused to be made a series of materially false or misleading statements about China Ceramics's business, prospects and operations. These material misstatements and omissions had the cause and effect of creating in the market an unrealistically positive assessment of China Ceramics and its business, prospects and operations, thus causing the Company's common stock to be overvalued and artificially inflated at all relevant times. Defendants' materially false and misleading statements during the Class Period resulted in Plaintiffs and other members of the Class purchasing the Company's securities at artificially inflated prices, thus causing the damages complained of herein.

### FIRST CLAIM
**Violation of Section 10(b) of
The Exchange Act and Rule 10b-5
Promulgated Thereunder Against All Defendants**

51.      Plaintiff repeats and realleges each and every allegation contained above as if fully set forth herein.

52.     During the Class Period, Defendants carried out a plan, scheme and course of conduct which was intended to and, throughout the Class Period, did: (1) deceive the investing public, including Plaintiff and other Class members, as alleged herein; and (2) cause Plaintiff and other members of the Class to purchase China Ceramics's securities at artificially inflated prices. In

13

furtherance of this unlawful scheme, plan and course of conduct, each of the Defendants took the actions set forth herein.

53.     Defendants: (a) employed devices, schemes, and artifices to defraud; (b) made untrue statements of material fact and/or omitted to state material facts necessary to make the statements not misleading; and (c) engaged in acts, practices, and a course of business that operated as a fraud and deceit upon the purchasers of the Company's securities in an effort to maintain artificially high market prices for China Ceramics's securities in violation of Section 10(b) of the Exchange Act and Rule 10b-5 promulgated thereunder. All Defendants are sued either as primary participants in the wrongful and illegal conduct charged herein or as controlling persons as alleged below.

54.     Defendants, individually and in concert, directly and indirectly, by the use, means or instrumentalities of interstate commerce and/or of the mails, engaged and participated in a continuous course of conduct to conceal adverse material information about the business, operations and future prospects of China Ceramics as specified herein.

55.     These Defendants employed devices, schemes, and artifices to defraud while in possession of material adverse non-public information, and engaged in acts, practices, and a course of conduct as alleged herein in an effort to assure investors of China Ceramics's value and performance and continued substantial growth, which included the making of, or participation in the making of, untrue statements of material facts and omitting to state material facts necessary in order to make the statements made about China Ceramics and its business operations and future prospects in the light of the circumstances under which they were made, not misleading, as set forth more particularly herein, and engaged in transactions, practices and a course of business that operated as a fraud and deceit upon the purchasers of China Ceramics's securities during the Class Period.

14

56.     Each of the Individual Defendants' primary liability, and controlling person liability, arises from the following facts: (1) the Individual Defendants were high-level executives, directors, and/or agents at the Company during the Class Period and members of the Company's management team or had control thereof; (2) each of these Defendants, by virtue of his responsibilities and activities as a senior officer and/or director of the Company, was privy to and participated in the creation, development and reporting of the Company's financial condition; (3) each of these Defendants enjoyed significant personal contact and familiarity with the other Defendants and was advised of and had access to other members of the Company's management team, internal reports and other data and information about the Company's finances, operations, and sales at all relevant times; and (4) each of these Defendants was aware of the Company's dissemination of information to the investing public which they knew or recklessly disregarded was materially false and misleading.

57.     Defendants had actual knowledge of the misrepresentations and omissions of material facts set forth herein, or acted with reckless disregard for the truth in that they failed to ascertain and to disclose such facts, even though such facts were available to them. Such Defendants' material misrepresentations and/or omissions were done knowingly or recklessly and for the purpose and effect of concealing China Ceramics's operating condition and future business prospects from the investing public and supporting the artificially inflated price of its securities. As demonstrated by Defendants' overstatements and misstatements of the Company's financial condition throughout the Class Period, Defendants, if they did not have actual knowledge of the misrepresentations and omissions alleged, were reckless in failing to obtain such knowledge by deliberately refraining from taking those steps necessary to discover whether those statements were false or misleading.

15

58.     As a result of the dissemination of the materially false and misleading information and failure to disclose material facts, as set forth above, the market price of China Ceramics's securities was artificially inflated during the Class Period. In ignorance of the fact that market prices of China Ceramics's publicly-traded securities were artificially inflated, and relying directly or indirectly on the false and misleading statements made by Defendants, or upon the integrity of the market in which the common stock trades, and/or on the absence of material adverse information that was known to or recklessly disregarded by Defendants but not disclosed in public statements by Defendants during the Class Period, Plaintiff and the other members of the Class acquired China Ceramics's securities during the Class Period at artificially high prices and were or will be damaged thereby.

59.     At the time of said misrepresentations and omissions, Plaintiff and other members of the Class were ignorant of their falsity, and believed them to be true. Had Plaintiff and the other members of the Class and the marketplace known the truth regarding China Ceramics's financial results, which was not disclosed by Defendants, Plaintiff and other members of the Class would not have purchased or otherwise acquired their China Ceramics's securities, or, if they had acquired such securities during the Class Period, they would not have done so at the artificially inflated prices that they paid.

60.     By virtue of the foregoing, Defendants have violated Section 10(b) of the Exchange Act, and Rule 10b-5 promulgated thereunder.

61.     As a direct and proximate result of Defendants' wrongful conduct, Plaintiff and the other members of the Class suffered damages in connection with their respective purchases and sales of the Company's securities during the Class Period.

62.    This action was filed within two years of discovery of the fraud and within five years of each plaintiff's purchases of securities giving rise to the cause of action.

**SECOND CLAIM**
**Violation of Section 20(a) of**
**The Exchange Act Against the Individual Defendants**

63.    Plaintiff repeats and realleges each and every allegation contained above as if fully set forth herein.

64.    The Individual Defendants acted as controlling persons of China Ceramics within the meaning of Section 20(a) of the Exchange Act as alleged herein. By virtue of their high-level positions, agency, ownership and contractual rights, and participation in and/or awareness of the Company's operations and/or intimate knowledge of the false financial statements filed by the Company with the SEC and disseminated to the investing public, the Individual Defendants had the power to influence and control, and did influence and control, directly or indirectly, the decision-making of the Company, including the content and dissemination of the various statements that Plaintiff contends are false and misleading. The Individual Defendants were provided with or had unlimited access to copies of the Company's reports, press releases, public filings and other statements alleged by Plaintiff to have been misleading prior to and/or shortly after these statements were issued and had the ability to prevent the issuance of the statements or to cause the statements to be corrected.

65.    In particular, each of these Defendants had direct and supervisory involvement in the day-to-day operations of the Company and, therefore, is presumed to have had the power to control or influence the particular transactions giving rise to the securities violations as alleged herein, and exercised the same.

17

66.     As set forth above, China Ceramics and the Individual Defendants each violated Section 10(b), and Rule 10b-5 promulgated thereunder, by their acts and omissions as alleged in this Complaint.

67.     By virtue of their positions as controlling persons, the Individual Defendants are liable pursuant to Section 20(a) of the Exchange Act. As a direct and proximate result of Defendants' wrongful conduct, Plaintiff and other members of the Class suffered damages in connection with their purchases of the Company's securities during the Class Period.

68.     This action was filed within two years of discovery of the fraud and within five years of each Plaintiff's purchases of securities giving rise to the cause of action.

**WHEREFORE**, Plaintiff prays for relief and judgment, as follows:

(a)     Determining that this action is a proper class action, designating Plaintiff as Lead Plaintiff and certifying Plaintiff as a class representative under Rule 23 of the Federal Rules of Civil Procedure and Plaintiff's counsel as Lead Counsel;

(b)     Awarding compensatory damages in favor of Plaintiff and the other Class members against all Defendants, jointly and severally, for all damages sustained as a result of Defendants' wrongdoing, in an amount to be proven at trial, including interest thereon;

(c)     Awarding Plaintiff and the Class their reasonable costs and expenses incurred in this action, including counsel fees and expert fees; and

(d)     Such other and further relief as the Court may deem just and proper.

## <u>JURY TRIAL DEMANDED</u>

Plaintiff hereby demands a trial by jury.

Dated: June 5, 2014                         Respectfully submitted,

18

**THE ROSEN LAW FIRM, P.A.**

_____

Phillip Kim, Esq. (PK 9384)
Laurence M. Rosen, Esq. (LR 5733)
Kevin Chan, Esq. (KC 0228)
275 Madison Ave, 34th Floor
New York, NY  10016
Phone: (212) 686-1060
Fax: (212) 202-3827
Email: pkim@rosenlegal.com
Email: lrosen@rosenlegal.com
Email: kchani@rosenlegal.com

Counsel for Plaintiff