**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| IN RE CHINA CERAMICS CO. LTD. SECURITIES LITIGATION | No. 1:14-cv-04100 (VSB)<br><br>ECF Case |

**MEMORANDUM OF LAW IN SUPPORT OF LEAD PLAINTIFFS' MOTION FOR**
**FINAL APPROVAL OF PROPOSED CLASS ACTION SETTLEMENT**

**TABLE OF CONTENTS**

I.    INTRODUCTION ................................................................................................ 1

II.   BACKGROUND ................................................................................................ 3

      A.    The Litigation.................................................................................... 4

      B.    The Settlement .................................................................................. 4

            1.    Cash Consideration and Release.............................................. 5

            2.    Notice to the Class .................................................................. 5

            3.    Exclusion and Objection Deadline........................................... 6

            4.    The Plan of Allocation ............................................................ 6

III.  ARGUMENT ..................................................................................................... 7

      A.    Final Approval of Proposed Class Action Settlement ........................... 7

            1.    Certification of the Class Pursuant to Fed. R. Civ. P. 23 is Appropriate.... 7

            2.    Final Approval of the Settlement Should be Granted Because the Proposed
                  Settlement is Fair, Adequate and Reasonable Under the Second Circuit's
                  *Grinnell* Factors ...................................................................... 8

                  i.     Complexity, Expense and Likely Duration of the Litigation.......... 9

                  ii.    Adequate Notice and Reaction of the Class................................. 10

                  iii.   Stage of Proceedings and Discovery Completed .......................... 11

                  iv.    Risks of Establishing Liability and Damages ............................... 11

                         a.    Risks Posed In Obtaining Discoverable Evidence............ 12

                         b.    Risks Posed by Obstacles to Collecting a Judgment ........ 13

                  v.     Range of Reasonableness of the Settlement ................................. 14

                  vi.    Settlement Resulted From Arm's-Length Negotiations ............... 16

                  vii.   Greater Judgment ..................................................................... 17

      B.    Approval of the Plan of Allocation Is Warranted ................................ 17

IV.    CONCLUSION.................................................................................................................. 18

## **TABLE OF AUTHORITIES**

**Cases**

*Chatelain v. Prudential-Bache Sec., Inc.*,
        805 F. Supp. 209 (S.D.N.Y. 1992)............................................................................. 10

*Dura Pharmaceuticals, Inc. v. Broudo*,
        544 U.S. 336 (2005)........................................................................................... 6, 18

*Granada Invs., Inc. v. DWG Corp.*,
        962 F.2d 1203 (6th Cir. 1992) ............................................................................... 14

*Hammon v. Barry*,
        752 F. Supp. 1087  (D.D.C. 1990) ......................................................................... 10

*In re "Agent Orange" Prod. Liab.Litig.*,
        611 F. Supp. 1396 (E.D.N.Y. 1985) ...................................................................... 15

*In re American Bank Note Holographics, Inc., Sec. Litig.*,
        127 F. Supp. 2d 418 (S.D.N.Y. 2001).............................................................. 12, 16, 17

*In re AT&T Corp. Sec. Litig.*,
        455 F.3d 160 (3d Cir. 2006)................................................................................... 14

*In re China Sunergy Sec. Litig.*,
        No. 07-Civ.7895, 2011 WL 1899715 (S.D.N.Y. May 13, 2011) ................................... 15

*In re EVCI Career Colleges Holding Corp. Sec. Litig.*,
        05 Civ. 10240, 2007 WL 2230177 (S.D.N.Y. July 27, 2007) ......................................... 8

*In re Global Crossing Sec. & ERISA Litig.*,
        225 F.R.D. 436 (S.D.N.Y. 2004) ............................................................................ 18

*In re Gulf Oil/Cities Serv. Tender Offer Litig.*,
        142 F.R.D. 588 (S.D.N.Y. 1992) ............................................................................ 12

*In re Merrill Lynch Tyco Research Sec. Litig.*,
        249 F.R.D. 124 (S.D.N.Y. 2008) .............................................................................. 8

*In re NASDAQ Market-Makers Antitrust Litig.*,
        187 F.R.D. 465 (S.D.N.Y. 1998) ............................................................................ 10

*In re Oracle Sec. Litig.*,
        1994 WL 502054 (N.D. Cal. June 18, 1994) ............................................................. 18

*In re PaineWebber Ltd. P'ships Litig.*,
    171 F.R.D. 104 (S.D.N.Y. 1997) .......................................................... 12, 14, 17

*In re Salomon Inc Sec. Litig.*,
    No. 91 CIV. 5442 (RPP), 1994 WL 265917 (S.D.N.Y. June 16, 1994).......................... 17

*In re Sumitomo Copper Litig.*,
    189 F.R.D 274  (S.D.N.Y. 1999) .................................................................. 9, 17

*In re Union Carbide Corp. Consumer Prods. Bus. Sec. Litig.*,
    718 F. Supp. 1099 (S.D.N.Y. 1989)................................................................... 15

*In re Warner Commc'ns. Sec. Litig.*,
    618 F. Supp. 735 (S.D.N.Y. 1985).................................................................... 11

*In re Warner Commc'ns.Sec. Litig.*,
    798 F.2d 35 (2d Cir. 1986)............................................................................. 9

*Maywalt v. Parker & Parsley Petroleum Co.*,
    67 F.3d 1072 (2d Cir. 1995).......................................................................... 8

*Munoz v. China Expert Tech., Inc.*,
    07 CIV. 10531 AKH, 2011 WL 5346323 (S.D.N.Y. Nov. 7, 2011) ................................ 13

*Olden v. LaFarge Corp.*,
    472 F. Supp. 2d 922 (E.D. Mich. 2007)............................................................. 11

*Slomovics v. All For A Dollar, Inc.*,
    906 F. Supp. 146 (E.D.N.Y. 1995) .................................................................. 10

*Stieberger v. Sullivan*,
    792 F. Supp. 1376 (S.D.N.Y. 1992).................................................................. 10

*Strougo v. Bassini*,
    258 F. Supp. 2d 254 (S.D.N.Y. 2003)................................................................. 8

*Trief v. Dun & Bradstreet Corp.*,
    840 F. Supp. 277 (S.D.N.Y. 1993).................................................................... 8

*Varljen v. H.J. Meyers & Co., Inc.*,
    97 Civ. 6742, 2000 WL 1683656 (S.D.N.Y. Nov. 8, 2000) ........................................ 8

*Velez v. Novartis Pharm. Corp.*,
    04 CIV 09194 CM, 2010 WL 4877852 (S.D.N.Y. Nov. 30, 2010)................................. 15

*Wal-Mart Stores, Inc. v. Visa U.S.A. Inc.*,
    396 F.3d 96 (2d Cir. 2005)........................................................................ 8, 16

*Weinberger v. Kendrick,*
    698 F.2d 61 (2d Cir. 1983) .................................................................................. 8

**Other Authorities**

4 Alba Conte & Herbert Newberg, *Newberg on Class Actions*
    § 11.41 at 87-89 (4th ed. 2002) ........................................................................ 17

Jacques Delisle and Elizabeth Trujillo, *Consumer Protection in Transnational Contexts,*
    58 Am. J. Comp. L. 135, 161 (2010) ................................................................ 13

Jason Hsu, *Judgment Unenforceability in China,*
    19 Fordham J. Corp. & Fin. L. 201 (2013) ...................................................... 14

Laarni T. Bulan, Ellen M. Ryan & Laura E. Simmons, *Securities Class Action Settlements: 2013 Review and Analysis* (Cornerstone Research 2014) ........................................ 15

*Manual for Complex Litigation, Third,*
    § 30.42 (1995) .................................................................................................. 16

Zhong Jianhua and Yu Guanghua, *Establishing the Truth on Facts: Has the Chinese Civil Process Achieved this Goal?,*
    13 J. Transnat'l L. & Pol'y 393 (2004) ............................................................ 13

**Rules**

Fed. R. Civ. P. 23 ...................................................................................................... 4, 7

Fed. R. Civ. P. 23(e) ................................................................................................... 8

## I.   INTRODUCTION

Lead Plaintiffs Ramin Siroosian, Shiva Siroosian, and Mike Banigan ("Lead Plaintiffs"), on behalf of themselves and the Class,[1] respectfully submit this memorandum in support of the motion for final approval of the proposed settlement.[2]

The Settlement, which seeks to resolve this litigation in its entirety between the Parties, provides for $310,000 in cash and $540,000 worth of shares of China Ceramics Co., Ltd. ("China Ceramics" or the "Company") common stock.  The Settlement is eminently fair, reasonable, and adequate as it was reached as a result of arm's-length negotiations among the Parties, assisted by experienced counsel with an in-depth understanding of the strengths and weaknesses of the case. Moreover, in a context where the majority of defendants China Ceramics, Huang Jia Dong, Su Pei Zhi, Hen Man Edmund, Ding Wei Dong, Paul K. Kelly, Cheng Yan Davis, William L. Stulginsky, Su Wei Feng, Shen Chang Liang, and Jianwei Liu (collectively "Settling Defendants") are located in the People's Republic of China ("PRC"), the Settlement makes sense because it is highly unlikely that Lead Plaintiffs could enforce a post-trial judgment ordering the

---

[1]"Class" means all persons who purchased China Ceramics Co., Ltd. common stock from March 30, 2012, through May 1, 2014, inclusive, and were purportedly damaged thereby.  Excluded from the Settlement Class are: (1) the Settling Defendants, officers and directors of China Ceramics, members of their immediate families and their legal representatives, heirs, successors, or assigns, and any entity in which a China Ceramics Defendant has or had a controlling interest; (2) all current and former partners or accounting personnel of the Settling Defendants that were employed by the Settling Defendants during the Class Period, their immediate families, their heirs, successors, or assigns, and any entity controlled or owned by any such person; (3) any persons who have separately filed actions against one or more of Defendants, based in whole or in part on any claim arising out of or relating to any of the alleged acts, omissions, misrepresentations, facts, events, matters, transactions, or occurrences referred to in the Actions or otherwise alleged, asserted, or contended in the Actions;  (4) those persons who file valid and timely requests for exclusion in accordance with the Order; and (5) those persons who have no compensable damages. ("Preliminary Approval Order") (Dkt. No. 34).

[2]Unless otherwise indicated, all capitalized terms herein shall have the same meanings as set forth in the Amended Stipulation and Agreement of Settlement (the "Stipulation"), filed with the Court on July 22, 2015 (Dkt. No. 33).

Defendants to pay more. For these reasons and those set forth below, Lead Plaintiffs respectfully submit that the proposed Settlement strongly warrants approval by this Court as fair, reasonable, and adequate.

Additionally, as explained herein, the Plan of Allocation of the Net Settlement Fund was formulated by experienced counsel in consultation with a damages consultant and comports with loss causation and negative causation principles.  For these reasons, the Plan of Allocation is fair and reasonable and should be approved.

Pursuant to an order of the Court dated September 1, 2015 (the "Preliminary Approval Order") (Dkt No.34), 4,167 copies of the Notice of Pendency and Settlement of Class Action (the "Notice") were mailed to potential Class members and their nominees, as well as large brokerage firms and other institutions believed likely to have names and addresses of potential class members.  A copy of the Notice is attached as Exhibit A to the Declaration of Josephine Bravata Concerning Mailing of Notice of Pendency and Proposed Settlement of Class Action and Proof of Claim and Release, dated December 7, 2015 ("Bravata Decl.").  The Bravata Declaration is attached as Exhibit 1 to the Joint Declaration of Phillip Kim and Brian Murray In Support of Lead Plaintiffs' Motion For: (1) Final Approval of Proposed Class Action Settlement; and (2) Award of Counsel Fees, Reimbursement of Expenses, and Award to Lead Plaintiffs ("Joint Decl."). On September 21, 2015, the Summary Notice was disseminated electronically over *Business Wire*. Bravata Decl. ¶8. Requests for exclusion must be mailed to the Claims Administrator by December 16, 2015.  As of the date of this writing, there have been no requests for exclusion.  Bravata Decl. ¶10.  Objections to the Settlement are due on December 16, 2015. As of this writing there have been no objections.  Bravata Decl. ¶11.

## II.     BACKGROUND[3]

China Ceramics is a British Virgin Islands corporation headquartered in the PRC. Complaint (Dkt. No. 1) ¶7. China Ceramics is a leading Chinese manufacturer of ceramic tiles used for the exterior siding and for interior flooring and design in residential and commercial buildings. *Id.* Lead Plaintiffs allege that during the Class Period, Defendants issues materially false and misleading to the investing public, including that: (1) China Ceramics' internal control over its financial reporting was effective; and (2) China Ceramics' consolidated financial statements were fairly stated, despite the identification of a material weakness. *Id.* at 23-32

Lead Plaintiffs allege further that the truth of the misstatements in the financial statements began to enter the market on May 1, 2014, when NASDAQ announced that it halted the trading of China Ceramics securities as "additional information" was requested by NASDAQ and trading would resume when China Ceramics had fully satisfied NASDAQ's request for information. *Id.* at ¶37. China Ceramics subsequently revealed that: (i) China Ceramics terminated the engagement of Grant Thornton as its principal independent registered public accountants; (ii) following the decision to terminate Grant Thorton, William L. Stulginsky tendered his resignation as an independent director and Chairman of the Audit Committee; (iii) the audit of China Ceramics' consolidated financial statements for the year ended December 31, 2013 has not been completed; (iv) China Ceramics was unable to timely file its Annual Report on Form 20-F for the year ended December 31, 2013; and (v) during the preparation of its 2013 financial statements China Ceramics identified a write down of assets for the fourth quarter resulting from unused capacity at its Hengdali facility, which is currently estimated to be $7.5

---

[3]A detailed description of procedural history, settlement negotiations, and the considerations leading to the Settlement is set forth in the Joint Declaration.

million.  *Id*. at ¶¶38-44.  NASDAQ's halt of China Ceramics stock made the stock illiquid and virtually worthless at the time. *Id.* at ¶45. The stock has since resumed trading.

### A.     The Litigation

This action was commenced on June 6, 2014. Dkt. No. 1. On August 25, 2014, the Court appointed Ramin Siroosian, Shiva Siroosian, and Mike Banigan as Lead Plaintiffs, and approved their selection of Lead Counsel, The Rosen Law Firm, P.A. ("Rosen Law Firm") and Glancy Binkow & Goldberg LLP—now known as Glancy Prongay & Murray LLP ("GPM")— pursuant to the Private Securities Litigation Reform Act ("PSLRA"). Dkt. No. 16. Thereafter, Lead Counsel conducted a further substantial investigation regarding the claims asserted in the Action and hired an investigator in the PRC. After discussions amongst Lead Counsel and defense counsel as to the merits of the action, the Parties began settlement negotiations.

### B.     The Settlement

On May 29, 2015, Lead Plaintiffs moved the Court for preliminary approval. Dkt. Nos. 29-31. On July 15, 2015, the Court ordered that the Parties revise their preliminary approval documents and notice so that an objector is not required to appear in person at the Settlement Hearing to make a timely objection. Dkt. No. 32. The Parties submitted to the Court the requested revised documents on July 22, 2015. Dkt. No. 33.  After submitting court-ordered revisions to the preliminary approval documents, the Court granted preliminary approval of the Settlement, preliminarily found that the Class met the certification requirements of Fed. R. Civ. P. 23, and preliminarily designated the Lead Plaintiffs as representatives of the Class for the Settlement. Dkt. No. 34. A final hearing on the Settlement is scheduled for January 6, 2016 at 2:00 p.m.

### 1.      Cash Consideration and Release

The Settlement provides for a payment of $310,000 in cash and $540,000 worth of shares of China Ceramics common stock to pay claims of investors who purchased China Ceramics common stock from March 30, 2012 through May 1, 2014.

If the Settlement is finally approved by the Court, the Lead Plaintiffs, on behalf of the Class, will forever release their claims alleged against Settling Defendants. The Settlement represents an average recovery of $0.15 per share of China Ceramics stock for the estimated 5.8 million shares held by Class members who were damaged.[4] After deduction of the requested attorneys' fees and expenses and award to Lead Plaintiffs, the Settlement represents an average recovery of $0.09 per share. *See* Bravata Decl. Ex. A.

Locating other sources for funding any settlement or judgment would prove challenging: Defendants are located in the PRC where it is likely impossible to enforce against them a judgment entered by this Court. In particular, the cost of conducting full discovery in this case would be exorbitant, as almost all of the documentary evidence is in the PRC, and in Chinese, as are most of the witnesses.  Accordingly, Lead Plaintiffs' costs would likely total a substantial portion of any collectable judgment, significantly reducing the amount that could be distributed to Class Members.

### 2.      Notice to the Class

On September 21, 2015, pursuant to the Preliminary Approval Order, Lead Counsel caused the Notice to be mailed. The Notice advised Class Members of the terms of the Settlement and Plan of Allocation, and that Lead Counsel would seek a fee award not to exceed

---

[4] Lead plaintiffs' damage consultant estimates that approximately 5.8 million shares of China Ceramics common stock purchased or otherwise acquired during the Class Period may have been damaged by the conduct at issue in this action. The $0.15 per damaged share is before deduction of attorneys' fees, expenses and awards (if any) approved by the Court.

one-third of the Settlement Amount, reimbursement of expenses not to exceed $50,000, and an award to Lead Plaintiffs collectively not to exceed $4,500. Bravata Decl. Ex. A.  The Notice also advised Class Members that any objections to any aspect of the Settlement, or fees and expense requests, were due to be filed and received no later than December 16, 2015.

On September 21, 2015, the Publication Notice was disseminated electronically over *Business Wire*.  Bravata Decl. ¶8. As of the date of this writing, 4,167 copies of the Notice were mailed to Class Members. Bravata Decl. ¶¶5. 11.

### 3.     Exclusion and Objection Deadline

Requests for exclusion must be received by the Claims Administrator by December 16, 2015.  As of the date of this writing, there has been no exclusions.  Bravata Decl. ¶10. Objections to the Settlement are due on December 16, 2015.  As of this writing there have been no objections.  *See* Bravata Decl. ¶11.

### 4.     The Plan of Allocation

The Plan of Allocation was fully described in the Notice sent to the members of the Class, at page 4-7 thereof.  Bravata Decl. Ex. A.  It was formulated by Lead Counsel, upon consultation with a financial consultant, with the goal of reimbursing Class Members in a fair and reasonable manner consistent with the federal securities laws and the principles of loss causation. To that end, the Plan of Allocation does not compensate losses resulting from "in and out" transactions, *i.e.* losses from sales made prior to revelation of the truth. *See Dura Pharmaceuticals, Inc. v. Broudo*, 544 U.S. 336, 342 (2005) ("But if, say, the purchaser sells the shares before the relevant truth begins to leak out, the misrepresentation will not have led to any loss."). The Plan of Allocation requires any gains from Class Period transactions to be netted with losses from Class Period transactions, which is rational and reasonable. Once these considerations are taken into account, the Plan of Allocation provides that each authorized

claimant will receive a *pro rata* share of the Net Settlement Fund (*i.e.*, Settlement Amount less attorneys' fees and expenses, and award to Lead Plaintiffs). *See* Joint Decl. ¶¶69-72.

## III.   ARGUMENT

### A.   Final Approval of Proposed Class Action Settlement

#### 1.   Certification of the Class Pursuant to Fed. R. Civ. P. 23 is Appropriate

Pursuant to the Preliminary Approval Order entered on September 1, 2015 (Dkt. No. 34), the class was preliminarily certified as to "all persons who purchased China Ceramics Co., Ltd. common stock from March 30, 2012, through May 1, 2014, inclusive, and were purportedly damaged thereby.  Excluded from the Settlement Class are: (1) the Settling Defendants, officers and directors of China Ceramics, members of their immediate families and their legal representatives, heirs, successors, or assigns, and any entity in which a China Ceramics Defendant has or had a controlling interest; (2) all current and former partners or accounting personnel of the Settling Defendants that were employed by the Settling Defendants during the Class Period, their immediate families, their heirs, successors, or assigns, and any entity controlled or owned by any such person; (3) any persons who have separately filed actions against one or more of Defendants, based in whole or in part on any claim arising out of or relating to any of the alleged acts, omissions, misrepresentations, facts, events, matters, transactions, or occurrences referred to in the Actions or otherwise alleged, asserted, or contended in the Actions;  (4) those persons who file valid and timely requests for exclusion in accordance with the Order; and (5) those persons who have no compensable damages." Dkt. No. 34 at ¶3.

No changes have occurred since the issuing of the Preliminary Approval Order.  Thus the Court should finally certify this as a class action for the purposes of the Settlement.

      **2.**      **Final Approval of the Settlement Should be Granted Because the Proposed Settlement is Fair, Adequate and Reasonable Under the Second Circuit's *Grinnell* Factors**

As a matter of public policy, courts strongly favor the settlement of lawsuits. *Weinberger v. Kendrick,* 698 F.2d 61, 73 (2d Cir. 1983). This is particularly true in connection with complex class action litigation. *See Wal-Mart Stores, Inc. v. Visa U.S.A. Inc.*, 396 F.3d 96, 116 (2d Cir. 2005). When evaluating a proposed settlement under Fed. R. Civ. P. 23(e), a court must determine whether the settlement, taken as a whole, is fair, reasonable and adequate, and was not the product of collusion. *Maywalt v. Parker & Parsley Petroleum Co.*, 67 F.3d 1072, 1079 (2d Cir. 1995); *Varljen v. H.J. Meyers & Co., Inc.,* 97 Civ. 6742, 2000 WL 1683656, at *3 (S.D.N.Y. Nov. 8, 2000); *In re Merrill Lynch Tyco Research Sec. Litig.*, 249 F.R.D. 124, 132 (S.D.N.Y. 2008). A proposed class action settlement enjoys a presumption of fairness where, as here, it was the product of arm's-length negotiations conducted by capable counsel who are well-experienced in class action litigation arising under the federal securities laws. *See, e.g., In re EVCI Career Colleges Holding Corp. Sec. Litig.*, 05 Civ. 10240, 2007 WL 2230177 (S.D.N.Y. July 27, 2007); *Strougo v. Bassini*, 258 F. Supp. 2d 254, 257 (S.D.N.Y. 2003). Indeed, "absent evidence of fraud or overreaching, [courts] consistently have refused to act as Monday morning quarterbacks in evaluating the judgment of counsel." *Trief v. Dun & Bradstreet Corp.*, 840 F. Supp. 277, 281 (S.D.N.Y. 1993) (citation omitted). The principal factors in evaluating the fairness of a proposed settlement in the Second Circuit are well-settled:

> (1) the complexity, expense and likely duration of the litigation, (2) the reaction of the class to the settlement, (3) the stage of the proceedings and the amount of discovery completed, (4) the risks of establishing liability, (5) the risks of establishing damages, (6) the risks of maintaining the class action through the trial, (7) the ability of the defendants to withstand a greater judgment, (8) the range of reasonableness of the settlement fund in light of the best possible recovery, [and] (9) the range of reasonableness of the settlement fund to a possible recovery in light of all the attendant risks of litigation.

*City of Detroit v. Grinnell Corp.*, 495 F.2d 448, 463 (2d Cir. 1974). In weighing these factors, courts recognize that settlements usually involve a significant amount of give and take between the negotiating parties; therefore courts do not attempt to rewrite settlement agreements or try to resolve issues that are left undecided as a result of the parties' compromise. *See, e.g., In re Warner Commc'ns. Sec. Litig.*, 798 F.2d 35, 37 (2d Cir. 1986) ("It is not a district judge's job to dictate the terms of a class settlement.").  Lead Plaintiffs submit that the proposed Settlement is fair, reasonable and adequate when measured under the foregoing criteria and should be approved by this Court.

### i.        Complexity, Expense and Likely Duration of the Litigation

Securities class action cases are particularly "difficult and notoriously uncertain" with respect to both liability and damages issues. *See In re Sumitomo Copper Litig.*, 189 F.R.D 274, 281 (S.D.N.Y. 1999).  While Lead Counsel believes the claims alleged in the Complaint are valid and provable, uncertainty in litigation always remains.

The complexity of Lead Plaintiffs' claims weigh in favor of the Settlement. As further explained infra, this action presents a mosaic of issues whether the alleged false and misleading statements were false, whether they were known or knowable when the financial statements were filed with the SEC, and whether the alleged false and misleading statements were the cause of the Class Members' losses.

This case presents the unusual situation where the merits, based on currently-available evidence and information, appear to be in Lead Plaintiffs' favor, yet such strength is of little import in light of the costs of continued litigation.  China Ceramics conducts all of its operations in the PRC. The underlying events and transactions that form the basis of the alleged misstatements and omissions occurred in the PRC. Thus, the bulk of the relevant documentation and communications will be in Chinese, and the percipient witnesses are likely to speak only

Chinese. These issues are further complicated by the fact that depositions are not permitted in China.  Additionally, travel, interpreters, and related costs will be extremely high.  Even without the language barrier and witnesses halfway around the world, absent a settlement, the Parties would expend a significant amount of funds further litigating this case. Because Settling Defendants are in China, it is highly likely that they would refuse to comply with any judgment entered against them in this case, rendering such judgment a pyrrhic victory.

Further, a favorable judgment for Lead Plaintiffs could be the subject of post-trial motions and appeals, delaying any payment to Class Members even if Lead Plaintiffs were to prevail at trial. *See Slomovics v. All For A Dollar, Inc.*, 906 F. Supp. 146, 149 (E.D.N.Y. 1995) ("[t]he potential for this litigation to result in great expense and to continue for a long time suggest that settlement is in the best interests of the Class"); *see also Stieberger v. Sullivan*, 792 F. Supp. 1376, 1377 (S.D.N.Y. 1992); *Chatelain v. Prudential-Bache Sec., Inc.*, 805 F. Supp. 209, 213 (S.D.N.Y. 1992).

### ii.        Adequate Notice and Reaction of the Class

It has been repeatedly held that "one indication of the fairness of a settlement is the lack of or small number of objections." *Strougo*, 258 F. Supp. 2d at 258 (citing *Hammon v. Barry*, 752 F. Supp. 1087, 1093 (D.D.C. 1990)); *see also In re NASDAQ Market-Makers Antitrust Litig.*, 187 F.R.D. 465, 478-80 (S.D.N.Y. 1998) (approving settlement where "minuscule" percentage of the class objected); *Grinnell*, 495 F.2d at 462 (approving settlement where 20 objectors appeared from group of 14,156 claimants); *Olden v. LaFarge Corp.*, 472 F. Supp. 2d 922 (E.D. Mich. 2007) (approving settlement where 82 objectors appeared from a class of 11,000 people). The deadlines for objections to any aspect of the Settlement or to submit a request for exclusion are December 16, 2015.  To date, Lead Plaintiffs and Lead Counsel have not received any objections or exclusion to the Settlement. Bravata Decl. ¶¶10-11. This weighs in favor of

approving the Settlement. Lead Plaintiffs will address the requests for exclusion and objections, if any, in their reply.

### iii.        Stage of Proceedings and Discovery Completed

The Settlement was achieved after Lead Counsel: (a) conducted an extensive factual investigation, which included the review in the U.S. and in the People's Republic of China ("PRC") of publicly available documents about China Ceramics and related PRC legal issues; (b) researched, drafted and filed the operative initial complaint; (c) consulted with an accounting expert; (d) identified certain witnesses and developed leads; (e) consulted with a private investigator in the PRC relating to the allegations in this action; and (f) engaged in settlement negotiations with the Defendants.  *E.g.*, Joint Decl. ¶6. As a result, prior to entering into the Settlement, Lead Counsel understood the strengths and weaknesses of Lead Plaintiffs' case.  *See In re Warner Commc'ns. Sec. Litig.*, 618 F. Supp. 735, 745 (S.D.N.Y. 1985), *aff'd*, 798 F.2d 35 (2d Cir. 1986) (settlement approved where the parties "have a clear view of the strengths and weaknesses of their cases").  Moreover, the Settling Defendants' insurance policy is subject to a retention; therefore, its availability is uncertain. Joint Decl. ¶¶10, 13, 61.  Resolution at this stage of the case maximizes the recovery to the Class.   This weighs in favor of approving the Settlement.

### iv.        Risks of Establishing Liability and Damages

In assessing the Settlement, the Court should balance the immediacy and certainty of a recovery for the Class against the continuing risks of litigation. *See In re Gulf Oil/Cities Serv. Tender Offer Litig.*, 142 F.R.D. 588, 591-92 (S.D.N.Y. 1992); *In re Warner Commc'ns. Sec. Litig.*, 618 F. Supp. at 741. While the claims asserted in this action were brought in good faith and while Lead Plaintiffs believe they have merit, as further explained in the Joint Declaration,

there are always risks in attempting to achieve a better result for a class through continued litigation. ¶¶10-14.

Proof of damages in a securities case is always difficult and invariably requires highly-technical expert testimony. Lead Plaintiffs and Defendants' experts would have widely divergent views as to the range of recoverable damages at trial.  Where it is impossible to predict which expert's testimony or methodology would be accepted by the jury, courts have recognized the need for compromise. *See generally In re American Bank Note Holographics, Inc., Sec. Litig.*, 127 F. Supp. 2d 418, 426-27 (S.D.N.Y. 2001) (stating that "[i]n such a battle, Plaintiffs' Counsel recognize the possibility that a jury could be swayed by experts for Defendants, who could minimize or eliminate the amount of Plaintiffs' losses"); *see also In re PaineWebber Ltd. P'shipsLitig.*, 171 F.R.D. 104, 129 (S.D.N.Y. 1997), *aff'd*, 117 F.3d 721 (2d Cir. 1997). Aside from these difficulties – which are common to any contested securities action – Lead Counsel has identified the following specific risks weighing against continued prosecution of this action:

### a.      Risks Posed In Obtaining Discoverable Evidence

Lead Plaintiffs' and Lead Counsel recognize that prosecution of this case to trial would have presented substantial difficulties not seen in otherwise similar securities class actions. Because China Ceramics is headquartered in the PRC, discovery in this case will be difficult, costly, and time consuming, and there is a risk that Plaintiffs would be unable to obtain key evidence because it would be located outside Lead Plaintiffs' reach. Document collection in the PRC imposes a number of legal and regulatory challenges, including compliance with Chinese State Secrets laws and privacy directives. Indeed, defendants often contest discovery on the basis that their corporate documents are protected by the PRC State Secrets Law. *Munoz v. China Expert Tech., Inc.*, 07 CIV. 10531 AKH, 2011 WL 5346323 (S.D.N.Y. Nov. 7, 2011); Joint Decl. ¶53. "China does not permit attorneys to take depositions in China for use in foreign

courts." U.S. State Department, International Judicial Assistance: Country Information—China, Obtaining Evidence In Civil and Commercial Matters.[5]  As a result, there is doubt as to whether one can obtain document discovery or conduct a third party deposition of a person that resides in the PRC. *Id.*  Even party depositions present additional difficulties since they must be conducted outside of the PRC, typically in Hong Kong.  *Id.* Therefore, Lead Plaintiffs and Lead Counsel recognize there is significant risk in obtaining the proof necessary to prevail at trial. *See* Jacques Delisle and Elizabeth Trujillo, *Consumer Protection in Transnational Contexts*, 58 Am. J. Comp. L. 135, 161 (2010) ("Discovery in China for litigation in the United States faces formidable barriers[.]"); Zhong Jianhua and Yu Guanghua, *Establishing the Truth on Facts: Has the Chinese Civil Process Achieved this Goal?*, 13 J. Transnat'l L. & Pol'y 393, 409 (2004) ("Strictly speaking, there is no system comparable to discovery in China.").

### b.       Risks Posed by Obstacles to Collecting a Judgment

Lead Plaintiffs and Lead Counsel also recognize that they will face difficulty enforcing any judgment against a company whose operations and assets are almost exclusively located in the PRC. Chinese courts will not likely enforce U.S. civil judgments. *See* Dan Harris, Chart on Enforcing Judgments Around the World, Including China, China Law Blog (June 22, 2013) ("When it comes to enforcing US court judgments in China, the law has been clear and remains clear. China won't do it. Not now. Not later. Maybe not ever.")[6]; Jason Hsu, *Judgment Unenforceability in China*, 19 Fordham J. Corp. & Fin. L. 201 (2013).  This poses a significant risk to the class because, even if Lead Plaintiffs and Lead Counsel are successful in obtaining a judgment, they may be unable to collect it against Settling Defendants.

---

[5]Available at < http://travel.state.gov/content/travel/english/legal-considerations/judicial/country/china.html>. Last viewed on December 7, 2015.
[6]Available at <http://www.chinalawblog.com/2013/06/chart-on-enforcing-judgments-around-the-world-including-china.html>. Last viewed on December 7, 2015.

v.        **Range of Reasonableness of the Settlement**

Reality dictates that, to settle a case, some discount needs to be offered to a settling defendant, or it would otherwise have no economic incentive to settle. Additionally, in the context of a factually and legally complex securities class action lawsuit, responsible class counsel cannot be certain that they will be able to obtain – and enforce – a judgment at or near the full amount of the class-wide damages that they would propose. Thus, the possibility that a class "might have received more if the case had been fully litigated is no reason not to approve the settlement." *Granada Invs., Inc. v. DWG Corp.*, 962 F.2d 1203, 1206 (6th Cir. 1992) (citation omitted).

Indeed, the Second Circuit has held that "[t]he fact that a proposed settlement may only amount to a fraction of the potential recovery does not, in and of itself, mean that the proposed settlement is grossly inadequate and should be disapproved." *Grinnell*, 495 F.2d at 455 (footnote omitted); *accord In re AT&T Corp. Sec. Litig.*, 455 F.3d 160, 170 (3d Cir. 2006). "In fact there is no reason, at least in theory, why a satisfactory settlement could not amount to a hundredth or even a thousandth part of a single percent of the potential recovery." *Grinnell*, 495 F.2d at 455, n.2. Courts agree that the determination of a "reasonable" settlement is not susceptible to a single mathematical equation yielding a particularized sum. *In re PaineWebber*, 171 F.R.D. at 130; *In re Union Carbide Corp. Consumer Prods. Bus. Sec. Litig.*, 718 F. Supp. 1099, 1103 (S.D.N.Y. 1989).

Lead Counsel estimates the aggregate damages to the class are $3 million. Joint Decl. ¶15. The Settlement represents 28.3% of this damages estimate. This discount is higher than the range of previously approved settlements by courts in this district. *See In re China Sunergy Sec. Litig.*, No. 07-Civ.7895, 2011 WL 1899715, at *15 (S.D.N.Y. May 13, 2011) (noting that the average settlement in securities class actions ranges from 3% to 7% of the class' total estimated

14

losses); *Velez v. Novartis Pharm. Corp.*, 04 CIV 09194 CM, 2010 WL 4877852, *14 (S.D.N.Y. Nov. 30, 2010) (noting that "courts often approve class settlements even where the benefits represent 'only a fraction of the potential recovery'" and collecting cases from the Southern District where settlements were approved for percentages of estimated damages such as 1.6%, 2%, and 5%). According to Cornerstone Research, the median ratio of settlement to estimated damages was 2.1% in 2014 (the median settlement as a percentage of damages was 2.2% in 2014).[7] The median settlement for cases with estimated damages less than $50 million, such as the instant case, was 11.7% between 2005-2013 and 9.9% in 2014. *Id.*, at 9. These figures are based on the gross recovery in cases, before the deduction of attorneys' fees and expenses. Thus, the Settlement here of 28.3% of damages is 186% higher than the median for 2014 and 142% higher than the median between 2005-2013.

Additionally, the Settlement provides for payment to Class Members now, without delay, not some wholly-speculative payment of a hypothetically-larger amount years down the road. "[M]uch of the value of a settlement lies in the ability to make funds available promptly." *In re "Agent Orange" Prod. Liab. Litig.*, 611 F. Supp. 1396, 1405 (E.D.N.Y. 1985). Any additional recovery would be highly speculative, and would require many years of additional litigation with no promise of recovering any personal assets of the individual defendants.

Although additional litigation could theoretically result in a large damages award at trial, it does not further the Class's ability to collect any judgment from the *unavailable* assets of the Defendants who are located in the PRC. Joint Decl. ¶¶10-14. Given the obstacles and uncertainties attendant to this complex litigation and the availability of Defendants' insurance

---

[7]  Available at <http://securities.stanford.edu/research-reports/1996-2014/Settlements-Through-12-2014.pdf>. Last viewed December 7, 2015.

policy, the Settlement is well within the range of reasonableness. It is unquestionably better than the unfortunate likelihood of no recovery at all.

<strong>vi.        Settlement Resulted From Arm's-Length Negotiations</strong>

The experience and reputation of the parties' counsel and the arm's-length nature of the negotiations is entitled to great weight. *See, e.g., Wal-Mart*, 396 F.3d at 116 (quoting *Manual for Complex Litigation, Third*, § 30.42 (1995))("[a] 'presumption of fairness, adequacy, and reasonableness may attach to a class settlement reached in arm's-length negotiations between experienced, capable counsel after meaningful discovery'"); *American Bank Note*, 127 F. Supp. 2d at 428 ("Courts have looked to ensure that the settlement resulted from arm's-length negotiations between counsel possessed of experience and ability necessary to effective representation of the class's interests.") (internal quotations omitted).

The record demonstrates the procedural fairness of the Settlement. The proposed Settlement was the result of lengthy negotiations between Lead Counsel and defense counsel. *See* Joint Decl. ¶42.  The attorneys on both sides are experienced and thoroughly familiar with the factual and legal issues posed in the litigation (as evidenced by the procedural history of the case and the issues briefed before the Court). Courts recognize that the opinion of experienced and informed counsel supporting settlement is entitled to considerable weight.  *See Sumitomo*, 189 F.R.D. at 280 (when settlement negotiations are conducted at arm's length, "'great weight' is accorded to the recommendations of counsel, who are most closely acquainted with the facts of the underlying litigation") (quoting *In re Paine Webber Ltd. P'ships. Litig*., 171 F.R.D. at 125; *In re Salomon Inc Sec. Litig.*, No. 91 CIV. 5442 (RPP), 1994 WL 265917, at *13 (S.D.N.Y. June 16, 1994) (judgment of experienced counsel "weighs strongly in favor [of] the proposed settlement"); 4 Alba Conte & Herbert Newberg, *Newberg on Class Actions* § 11.41 at 87-89 (4th ed. 2002).

Lead Counsel urges final approval of the proposed settlement based upon their: knowledge of the strengths and weaknesses of the case, analysis and investigation to date, the likely recovery at trial and/or after appeal, and experience in evaluating proposed class action settlements — particularly cases involving PRC companies like China Ceramics.  Defendants are also represented by highly-capable counsel, who entered into the Settlement following extensive negotiation.

### vii.       Greater Judgment

For the reasons explained herein, the possibility of greater recovery than provided by the Settlement is very unlikely because enforcing a judgment against Settling Defendants in the PRC will be difficult, if not impossible, and the D&O insurance policy, should its proceeds be available, will be exhausted if this case proceeds to trial.  *See, e.g., In re American Bank Note*, 127 F. Supp. 2d at 427.

The Settlement should therefore be granted because it is fair, adequate and reasonable under the Second Circuit's *Grinnell* factors.

### B.       Approval of the Plan of Allocation Is Warranted

The Plan of Allocation was formulated with the principles of loss causation in mind. Therefore, those shareholders who bought and then sold shares, "before the relevant truth begins to leak out" have no recognized losses under the Plan of Allocation because "the misrepresentation will not have led to any loss." *Dura*, 544 U.S. at 342; *see also In re Oracle Sec. Litig.*, 1994 WL 502054, at *1 (N.D. Cal. June 18, 1994) ("A plan of allocation that reimburses class members based on the extent of their injuries is generally reasonable").

In addition to excluding those who incurred no provable damages, the Plan of Allocation also recognizes differences in damages incurred by those who bought and sold their shares at different times during the Class Period, reflecting the different damages due to the purchase and

sale prices that they paid. *See* Bravata Decl. Ex. A. After taking into account lack of loss causation and the timing of Class Members stock purchases and sales, the Plan of Allocation does not discriminate between Class Members in the same position.  The Net Settlement Fund will be distributed on a *pro rata* basis depending on a Class Members' recognized losses.

In short, the Plan of Allocation has a rational basis, Lead Counsel believes it fairly compensates Class Members, and this Court should approve it.  *See In re Global Crossing Sec. & ERISA Litig.*, 225 F.R.D. 436, 462 (S.D.N.Y. 2004) ("When formulated by competent and experienced class counsel, an allocation plan need have only a 'reasonable, rational basis.'").

## IV.    CONCLUSION

For all of the foregoing reasons, Lead Plaintiffs respectfully request that the Court finally approve the proposed class action settlement.

Dated:  December 7, 2015                    Respectfully submitted,

                                            **GLANCY PRONGAY & MURRAY LLP**

                                            /s/Gregory B. Linkh
                                            Brian P. Murray (BM 9954)
                                            Gregory B. Linkh (GL 0477)
                                            122 East 42nd Street, Suite 2920
                                            New York, New York 10168
                                            Telephone: (212) 682-5340
                                            Facsimile: (212) 884-0988
                                            Email: bmurray@glancylaw.com
                                            Email: glinkh@glancylaw.com

                                            **GLANCY PRONGAY & MURRAY LLP**
                                            Lionel Z. Glancy
                                            Robert Prongay
                                            1925 Century Park East, Suite 2100
                                            Los Angeles, California 90067
                                            Telephone: (310) 201-9150
                                            Facsimile:  (310) 201-9160

                                            **THE ROSEN LAW FIRM, P.A.**
                                            Phillip Kim, Esq.
                                            Laurence Rosen, Esq.
                                            275 Madison Avenue, 34th Floor
                                            New York, New York 10016
                                            Tel: (212) 686-1060
                                            Fax: (212) 202-3827
                                            Email: pkim@rosenlegal.com
                                            Email: lrosen@rosenlegal.com


                                            *Lead Counsel for Lead Plaintiffs and the Class*

## <u>CERTIFICATE OF SERVICE</u>

I am an attorney admitted to practice in this district. I hereby certify, under penalty of perjury, that on this 7th day of December, 2015, I caused a true and correct copy of the foregoing document to be served on the persons listed below by causing a true copy thereof to be delivered by the Court's ECF system:

Eugene R. Licker                          Ralph DeMartino
LOEB & LOEB LLP                           SCHIFF HARDIN LLP
345 Park Avenue                           666 Fifth Avenue, 17th Floor
New York, NY 10154                        New York, NY 10103
Telephone: (212) 407-4157                 Telephone: (212) 745-0877
Facsimile: (646) 219-7454                 Facsimile: (212) 753-5044

**Counsel for Defendants Paul K. Kelly, William L. Stulginsky**   **Counsel for Defendant China Ceramics Co., Ltd.**

_____/s/Gregory B. Linkh_____
Gregory B. Linkh (glinkh@glancylaw.com)

20